## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DALTON TYLER WEAVER,**

     **Plaintiff,**

     **v.**                           **CASE NO. 24-3073-JWL**

**STATE OF KANSAS,  et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Dalton Tyler Weaver is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

### 1.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Winfield Correctional Facility in Winfield, Kansas.  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that while he was incarcerated at the Lansing Correctional Facility ("LCF") he was placed in segregation pending an investigation.  (Doc. 1, at 2.)  Plaintiff alleges that "after some time," he was taken to the clinic to "allegedly give blood for a test." *Id*.  Plaintiff alleges that he did not know what "she" injected him with, but he was told after signing some papers that he "just signed his life over." *Id*.  Plaintiff alleges that this all happened in 2020. *Id*.

Plaintiff alleges medical malpractice as Count I, arguing that government employees used electro-magnetic technology to put Plaintiff through a mental breakdown. *Id*. at 4.  Plaintiff claims

that Rick Bomia[1] gave Plaintiff orders from the military and FBI.  *Id*.

As Count II, Plaintiff alleges "contract fraud," due to the alleged breach of two plea agreements.  *Id*.  Plaintiff alleges that the plea agreements were breached "just to get [Plaintiff] in prison."  *Id*.

As Count III, Plaintiff alleges "attempted murder," arguing that EAI at the prison took Plaintiff to the clinic and "shot [him] up with electro-magnetic radiation."  *Id*. at 5.  Plaintiff also claims "fraud-racketeering," arguing that Steven Olsen revoked his probation two consecutive times for violations of the law that Plaintiff did not do while on probation.  *Id*. at 6.

Plaintiff names as defendants:  the State of Kansas; the Kansas Department of Corrections; Shannon Meyer, Former Warden; Rick Bomia, Government Official; (fnu) Scmidt, SORT Officer at LCF; (fnu) (lnu) (1) RN Nursing Staff with Centurion Medical at LCF.  For relief, Plaintiff seeks: to have all of his time served "granted back"; to have both "deals" with the state dismissed with prejudice; to have all parties involved prosecuted for a hate crime; to have an investigation; $500,000 for wrongful incarceration; and $750,000 for medical malpractice.  *Id*. at 7–8.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

---

[1] Plaintiff attaches a grievance in which he claims that Bomia, a Department of Defense employee,  is his daughter's grandfather and was Plaintiff's emergency contact.  (Doc. 1–1, at 7.)  Plaintiff states in the grievance that his emergency contact was contacted and told that Plaintiff needed a blood transplant.  *Id*.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d

1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  Heck Bar and Habeas Nature of Claim

To the extent Plaintiff challenges the validity of his sentence in his state criminal case, his federal claim must be presented in habeas corpus. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866

(10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). Therefore, any claim challenging his state sentence is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477 (1994). If Plaintiff has been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*. In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87. Plaintiff has not alleged that the conviction or sentence has been invalidated.

### 2. State of Kansas, KDOC and Probation Officer

Plaintiff names the State of Kansas and the Kansas Department of Corrections ("KDOC") as defendants. The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

"A party's capacity to sue or be sued in federal court is determined by state law." *Sims v. Kansas Dep't of Corr.*, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (citation omitted). "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued." *Id.* (citation omitted). "The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued." *Id.* (citing K.S.A. § 75-5203). Furthermore, as an agency of the State, the KDOC has absolute immunity under the Eleventh Amendment to a suit for money damages. *See McGee v. Corizon,* 831 F. App'x 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a state or its agencies.") (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State, nor its officials acting in their

official capacities are 'persons' under § 1983"). Plaintiff's claims against the State of Kansas and the KDOC are subject to dismissal. Because Plaintiff has neither made a specific claim against the State of Kansas or the KDOC nor shown any waiver of immunity from suit, he must show good cause why these defendants should not be dismissed from this action.

Plaintiff names his probation officer, Steven Olsen, as a defendant. "[P]robation officers are protected by absolute immunity if 'they are performing a narrowly defined judicial, executive, or legislative function.'" *Daniels v. USAO UT Dist.*, 2023 WL 4115986, at *2 (10th Cir. 2023) (unpublished) (quoting *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 347 (10th Cir. 1986) (citation omitted)). Although Plaintiff's allegations are sparse, "they appear to be related to activities 'intimately associated with the judicial phase of the criminal process' and are, therefore, protected by immunity." *Id.* (citation omitted); *see also Steward v. Chandler*, 2024 WL 1282770, at *3 (D. N.M. 2024) ("[b]ecause of the close working relationship between the probation officer and the sentencing court, the probation officer may communicate *ex parte* with the district court . . . and is entitled to absolute immunity from suit in the performance of his or her judicially-related functions.") (citing *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998)); *McDermott v. Smith*, 2023 WL 3620739, at *2 (E.D. Okla. 2023) (finding that state probation officers are cloaked with absolute judicial immunity when performing judicially related functions, and stating that this is because "'[p]robation officers are people with whom the judges may properly confer ex parte in connection with decisions based on probation reports—the same kind of conference as might be done with an elbow law clerk.'") (citations omitted). Plaintiff should show good cause why his claims against his probation officer should not be dismissed.

### 3. Medical Malpractice

Plaintiff claims that he was subjected to medical malpractice at LCF in 2020. Plaintiff

claims that he was injected with a substance at the clinic when he thought he was going to give a blood sample.  In response to Plaintiff's grievance on the matter, the Secretary of Corrections Designee states that there is "no record of the situation you are describing" and that medical staff has assisted Plaintiff with medical issues, will continue to provide Plaintiff with care, and asked mental health personnel to speak with Plaintiff about his allegation and to help him "process what you may be experiencing as related to mental health issues."  (Doc. 1–1, at 14.)

Medical malpractice against a prisoner is a state law claim and does not state a claim for relief under Section 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")  Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction."  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations omitted); *see also Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.") (citation omitted).

Even if Plaintiff could claim an Eighth Amendment violation based on the alleged incident in 2020, his claim would we barred by the statute of limitations.  The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat.

8

Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).  The same two-year statute of limitations governs actions under 42 U.S.C. § 1985.  *See Alexander v. Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted).  In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id.* at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the Complaint that Plaintiff's medical claims are subject to dismissal as barred by the applicable two-year statute of limitations.  Plaintiff filed his Complaint on May 16, 2024.  Plaintiff's alleged violations occurred in 2020.  It thus appears that any events or acts of Defendants taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred.  *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).  Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling.

### 4. State Actor

Plaintiff names Rick Bomia and Crystal French, his state court defense attorney, as defendants.  Although Plaintiff lists Bomia as a government official, his attachments show that Bomia is Plaintiff's daughter's grandfather and was listed as Plaintiff's emergency contact at LCF.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  A defendant acts "under color of state law" when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Id*. at 49 (citations omitted).  Nothing in the Complaint suggests that Bomia was acting in a capacity other than as Plaintiff's emergency contact.  Plaintiff states that Bomia is with the Department of Defense, which is not a state agency.  Plaintiff has failed to allege that Bomia was acting under color of state law and his claims against this defendant are subject to dismissal.

Plaintiff also names his state court defense attorney as a defendant.  Plaintiff has not shown that his state court defense attorney was acting under color of state law as required under § 1983.  *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981) (assigned public defender is ordinarily not considered a state actor because their conduct as legal advocates is controlled by professional standards independent of the administrative direction of a supervisor); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 Fed. Appx. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5, 2013) ("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant." (citations omitted)).  A criminal defense

attorney does not act under color of state even when the representation was inadequate. *Briscoe v. LaHue*, 460 U.S. 325, 330 n.6 (1983).  Plaintiff's claims against his defense attorney are subject to dismissal for failure to state a claim.

### 5.  Attempted Murder and Racketeering

Plaintiff does not have a private right of action to enforce criminal laws. As a general matter, federal criminal statutes that "do not provide for a private right of action" are "not enforceable through a civil action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *see also Riles v. Prater*, 2022 WL 3268747, at *3 (W.D. Okla. 2022) (statute making in a federal crime to attempt to commit murder or manslaughter does not support a private cause of action) (citing *Williams v. St. Vincent Hosp.*, 258 F. App'x 293, 295 (11th Cir. 2007) (concluding that plaintiff had no standing to invoke 18 U.S.C. § 1113); *see* also *Nguyen v. Ridgewood Savings Bank*, No. 14-CV-1058, et al., 2015 WL 2354308, at *13 (E.D.N.Y. May 15, 2015) (finding no private right of action under 18 U.S.C. § 1113)).

Further, the Court is not authorized to direct state or federal prosecutorial authorities to bring a criminal case against any of the Defendants.  *See Maine v. Taylor*, 477 U.S. 131, 136 (1986) ("the United States and its attorneys have the sole power to prosecute criminal cases in federal courts"); *Lynn v. Cline*, 2019 WL 2578241, at *2 (D. Kan. 2019) ("This Court cannot order the initiation of criminal charges, which is a decision within the discretion of prosecuting attorneys.") (citing *Presley v. Presley*, 102 F. App'x 636, 636–37 (10th Cir. 2004) (holding that a court order for "investigation and prosecution of various people for various crimes" would "improperly intrude upon the separation of powers")); *State ex rel. Rome v. Fountain*, 678 P.2d 146, 148 (Kan. 1984) ("[A] private individual has no right to prosecute another for crime and no right to control

any criminal prosecution when one is instituted. Thus, the philosophy of this state has always been that a criminal prosecution is a state affair and the control of it is in the public prosecutor.").

Plaintiff also claims "fraud-racketeering," arguing that Steven Olsen revoked his probation two consecutive times for violations of the law that Plaintiff did not do while on probation.  As stated above, Plaintiff's probation officer is entitled to immunity.  Furthermore, as set forth above, when the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.

In addition, Plaintiff has failed to show that his probation officer engaged in "fraud-racketeering" when his probation was revoked.  "RICO provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct." *100 Mount Holly Bypass v. Axos Bank*, 2024 WL 1722557, at *8 (D. Utah 2024) (citing *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  To prove a claim under RICO, a plaintiff must show that defendants " '(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Id.* (citations omitted).  Plaintiff has failed to allege any facts supporting a claim under RICO.  *See Shivers v. Stephens Cty.*, 2022 WL 19079188, at *4 (W.D. Okla. 2022) (finding that plaintiff failed to allege that drug dealing in the SCDC affected interstate commerce or injured him in his business or property, and prisoner merely attempted to graft a civil RICO claim onto his civil rights claim).  Furthermore, a RICO claim relating to his conviction is barred by *Heck*. *Simms v. Gibson*, 168 F. App'x 860, 861 (10th Cir. 2006) (unpublished).

## IV.  Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel, including his unsuccessful attempts

to obtain counsel.  (Doc. 3–1.)   The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court has found that the Complaint is subject to dismissal.  The Court therefore denies the motion for appointment of counsel without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

## V.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **June 17, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated May 17, 2024, in Kansas City, Kansas.**

                    <u>S/  John W. Lungstrum</u>
                    **JOHN W. LUNGSTRUM**
                    **UNITED STATES DISTRICT JUDGE**